Citation Nr: 1528199 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 11-06 268 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUE

Entitlement to service connection for a skin disorder, to include chloracne, to include as due to herbicide exposure.


REPRESENTATION

Appellant represented by: Georgia Department of Veterans Services


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

J. L. Wolinsky Associate Counsel

INTRODUCTION

The Veteran had active military service from June 1965 to June 1968.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia. The Veteran's claim was previously reopened and remanded by the Board in December 2014. 

In November 2014, the Veteran testified at a videoconference Board hearing conducted before the undersigned Veterans Law Judge (VLJ). A transcript of the hearing has been associated with the claims file.

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record.

FINDING OF FACT

A chronic skin disorder, to include chloracne, did not have its onset in service and no current skin disorder is causally or etiologically related to military service.


CONCLUSION OF LAW

The criteria for establishing entitlement to service connection for a skin disorder, to include chloracne, to include as due to herbicide exposure have not been met. 38 U.S.C.A. §§ 1110, 1131, 1154, 5103(a), 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014).




REASONS AND BASES FOR FINDING AND CONCLUSION

VCAA

The Board must discuss whether VA has complied with its duties to notify and assist the Veteran in substantiating his claims. In this respect, the Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a)(2014).

Proper notice from VA must inform the Veteran of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the Veteran is expected to provide in accordance with 38 C.F.R. § 3.159(b)(1). The notice requirements apply to all five elements of a service-connection claim, including: (1) veteran status; (2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

A letter sent by VA in June 2009 advised the Veteran with what information or evidence is necessary to substantiate his service connection claim as well as his and VA's respective responsibilities in obtaining such evidence and information, and how VA determines the disability rating, and effective date. The June 2009 VCAA letter was sent prior to the rating decision in July 2009. Therefore, VA fulfilled its duty to notify. 

VA's duty to assist includes assisting the claimant in the procurement of service and other relevant records, as well as obtaining a medical examination or opinion of the Veteran's disability when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159; McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006). The RO associated the Veteran's service treatment records (STRs) and VA treatment records with the claims file. The Veteran has not identified any treatment records aside from those that are already of record, nor is there any indication that the Veteran has sought additional treatment relevant to the instant appeal.

The Veteran was also provided an opportunity to set forth his contentions during a videoconference Board hearing in November 2014, which fulfilled the requirements set forth by Bryant v. Shinseki, 23 Vet. App. 488 (2010) (holding that 38 C.F.R. § 3.103(c)(2) requires that the Veterans Law Judge who chairs a hearing fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked).

The prior remand instructions were substantially complied with for the Veteran's claim. The December 2014 Board remand instructions stated the Veteran be scheduled for a VA examination, and for the issuance of a Supplemental Statement of the Case if necessary. The Veteran was accorded a skin diseases Disability Benefits Questionnaire (DBQ) examination in February 2015 and a SSOC was issued in April 2015. Accordingly, the Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)).

The February 2014 skin DBQ is adequate, as the examination report shows that the examiner considered the Veteran's relevant medical/military/occupational history, reviewed relevant physical examinations with testing and provided reasoned analysis to support the medical opinion provided. See Stefl v. Nicholson, 21 Vet. App. 120, 123-24 (2007); Barr v. Nicholson, 21 Vet. App. 303, 311-12 (2007) (holding that VA must ensure that the examination provided is adequate). 

As VA satisfied its duties to notify and assist the Veteran, the Board finds that there is no further action to be undertaken to comply with the provisions of 38 U.S.C.A. § 5103(a), § 5103A, or 38 C.F.R. § 3.159, and that the Veteran will not be prejudiced as a result of the Board's adjudication of his claim. 


Legal Criteria
Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C.A. 1110, 1131 (West 2014); 38 C.F.R. 3.303(a) (2014).

Additionally, the law provides that if a veteran was exposed to a herbicide agent during active military, naval, or air service, certain diseases shall be service-connected if the requirements of 38 C.F.R. § 3.307(a)(6) are met. 38 C.F.R. § 3.309(e) (2014). Chloracne is one such enumerated disability. Id. 

For the purposes of § 3.307, the term herbicide agent means a chemical in a herbicide used in support of the United States and allied military operations in the Republic of Vietnam during the Vietnam era. 38 C.F.R. § 3.307(a)(6)(i). 

A veteran who, during active military service, served in Vietnam during the period beginning in January 1962 and ending in May 1975 is presumed to have been exposed to herbicides. 38 C.F.R. §§ 3.307, 3.309. 

The Board must consider all the evidence of record and make appropriate determinations of competence, credibility, and weight. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). "The Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant." Id. at 367.

Analysis

The Veteran indicates that he has a skin disorder, and that the areas affected include the bilateral elbows and feet. He essentially contends the skin disorder began during service due to extreme heat and rain in Vietnam, or is attributable to exposure to an herbicide agent during his service in Vietnam. He asserts that manifestations and/or residuals of his skin issues during service remain palpable through the present. 

The Board notes that the Veteran's service treatment records indicate that the Veteran was treated for skin conditions while in service, including lesions on his thigh and forearm, and fungus on his feet.

The Veteran was afforded a VA examination in February 2007. The examiner examined the Veteran and diagnosed him with dermatitis of the elbows, hands, knees, distal lower legs, and ankles, and maculopapular rash of the bilateral feet. The Veteran was diagnosed with dermatitis or eczema, infectious skin conditions, erythema elevation diutinum, and leukocytoclastic vasculitis at his February 2015 VA examination. The examiner determined that the Veteran did not have the clinical presentation or a diagnosis of chloracne.

As noted in the previous section, there must be a current diagnosis of a disorder for service connection to be granted. Without a medical diagnosis of chloracne, the Board must deny that portion of the Veteran's claim. Degmetich v. Brown, 104 F.3d at 1333 (holding that the existence of a current disability is the cornerstone of a claim for VA disability compensation). 

Here, the evidence of record does not reflect, and the Veteran has not supplied, sufficient medical documentation establishing a diagnosis of chloracne. Such evidence would be required to support this claim. While the Veteran is competent to supply symptomology and reports of his skin condition, he is unable to diagnose a skin disorder which requires more than lay analysis. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). The Board notes the Veteran may be capable of relaying sufficient details for certain skin conditions, and will discuss those symptoms in relation to the Veteran's other diagnosed skin conditions. McCartt v. West, 12 Vet. App. 164, 167-68 (1999).

At the Veteran's skin conditions DBQ, the examiner diagnosed the Veteran with dermatitis or eczema, tinea corporis, erythema elevatum diutinum, and leukocytoclastic vasculitis. The Veteran therefore fulfills the current disability element for a skin condition, other than chloracne. The Veteran's STRs also show that he was treated for foot fungus and legions while in-service. The Board also accepts the Veteran's complaints of being exposed to extreme heat, and rain as true. 38 U.S.C.A. § 1154. Thus, the Veteran also fulfills the in-service element necessary for service connection. 

The Veteran's diagnosed skin diseases are not chronic diseases listed in 38 C.F.R. § 3.309, and chronicity and continuity of symptomatology under 38 C.F.R. § 3.303(b) does not apply. See Walker v. Shinseki, 708 F.3d (Fed. Cir. 2013) (presumption of service connection for a chronic disease manifested during service applies only to enumerated chronic diseases under 38 C.F.R. § 3.309(a) and continuity of symptomatology avenue to service connection is available only for enumerated chronic diseases, 38 C.F.R. § 3.309(a)).

In the instant appeal, there is conflicting evidence on the issue of nexus. Specifically, the Veteran contends that he has had skin problems since service. The Veteran has a lay statement on record which indicates that the Veteran had skin problems as early as 1967, which was observed by family members. On the other hand, the February 2015 opinion submitted by the VA examiner indicates a negative nexus opinion stating that the Veteran's skin disabilities are not as least as likely as not related to his military service.

In support of the examiner's opinion, the examiner reviewed the Veteran's medical history, and noted the Veteran's complaints of skin problems to his body, predominately to his face, arms, and legs. The Veteran specifically stated that his symptoms started in 1969. The Veteran's current symptoms were described as bumps to his face, head, and other areas of the body, notably the Veteran's feet, hands, and arms. The examiner noted a newly developed itchy rash to his chest. The Veteran treated his skin conditions with Dapsone, which he stated helped relieve his symptoms. The examiner found that the Veteran's skin condition causes diffuse dark red marks and raised plaques on deltoid region of right arm, and bilaterally on hands, legs, and feet. On physical examination of the Veteran, the examiner concluded that the Veteran's dermatitis affects more than 40% of his exposed and total body area, and that the Veteran's infections of the skin affected less than 5% of the Veteran's total body area, and did not affect his exposed areas. The Veteran's dermatitis was first diagnosed in February 2006. The Veteran reported that the functional impact to his ability to work from his skin conditions was that his feet hurt when standing. The examiner reviewed the Veteran's February 2006 pathology report, past medical records, and STRS.

The examiner concluded that the Veteran's skin conditions were less likely than not incurred in or caused by service, based on a review of the STRs, the Veteran's separation examination which only noted a right leg scar, and the Veteran's medical records from 1997, and records from 2006 onward. The examiner included medical explanations and research regarding the Veteran's diagnosed conditions of erythema elevatum diutinum (EED), and leukocytoclastic vasculitis (LV). In discussion, the examiner noted that the Veteran's service records were silent for EED, and the condition was diagnosed after service in 2006. The examiner noted that the Veteran's fungus which was present in-service, was not shown on separation, and not shown in medical records and that his skin disabilities were not diagnosed until February 2006. The examiner concluded that the medical literature did not support a causational link between the Veteran's service, including herbicide exposure to the Veteran's currently diagnosed conditions.

The February 2015 medical opinion provided contained not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). The examiner also discussed the Veteran's lay assertions that he had a skin disorder since 1969, and therefore complied with Dalton v. Nicholson, 21 Vet. App. 23 (2007). For these reasons, the Board finds that the VA examiner's opinion is of great probative value. The Veteran's contention that the cause of his skin disorder was caused by his in-service fungus, legions, and his exposure to herbicides, is not sufficient to outweigh the medical examiner's opinion. Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011). The Board notes that the examiner did not specifically address the lay contention that the Veteran's skin disorder existed in 1967, however a medical examiner is not required to comment on every favorable piece of evidence in a claims file. Monzingo v. Shinseki, 26 Vet. App. 97, 105 (2012). Furthermore, the examiner did consider claimed symptomatology from service, and shortly after service, which is consistent with the time frame made in the lay statement. Thus, the Board finds that the examiner sufficiently considered the theory espoused by the lay statement in determining the conclusion. 

While symptoms of skin disorders are capable of lay observation, and the Veteran contends that he has had the same skin condition since 1969, ultimately, the Board finds that the determination of whether a current skin disorder is a continuing disease process of symptomatology noted in service or rather a separate and distinct disorder due to post-service events is a complex medical determination requiring medical knowledge of the skin, and consequently, necessitates medical expertise to resolve. The medical expert determined that the Veteran's description of having had skin problems ever since service was inconsistent with not needing medical intervention to treat his currently diagnosed skin problems over the decades between his discharge from service and his initial diagnosis of the conditions in 2006. Thus, given the examiner's medical expertise and the sound basis for the unfavorable opinion rendered, the Board finds that there is credible and persuasive evidence that the Veteran's current skin complaints are not etiologically related to his in-service skin problems, nor related to his herbicide exposure. 

As such, service connection for a skin disorder, to include chloracne, to include as due to herbicide exposure, is not warranted on any basis. In reaching this conclusion, the Board considered the applicability of the benefit of the doubt doctrine. However, that doctrine is not applicable in the instant appeal as the preponderance of the evidence is against the claim. 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990); 38 C.F.R. § 3.102 (2013). Therefore, the Veteran's claim for service connection is denied.
 





ORDER

Entitlement to service connection for a skin disorder, to include chloracne, to include as due to herbicide exposure, is denied.



____________________________________________
WAYNE M. BRAEUER
 Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs